OCTAVIA WETMORE, Appellant, v. JAMES N. CROUCH *et al.*, Respondents.

St. Louis Court of Appeals, December 5, 1893.

Accounting: INSUFFICIENCY OF PLEADINGS AND EVIDENCE. The petition and the evidence in this cause are considered; the former is *held* not to state, and the latter not to establish, a case entitling the plaintiff to an accounting with respect to the profits of a speculation, into which the plaintiff and one of the defendants had jointly ventured.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*John J. McCann* for appellant.

*Selden P. Spencer* and *Dawson & Garvin* for respondents.

ROMBAUER, P. J.—This is a petition in equity for an accounting. Upon the hearing of the plaintiff's

evidence the trial court declared that, under the pleadings and evidence, the plaintiff was not entitled to the relief prayed for, nor to any relief. The plaintiff thereupon took a voluntary nonsuit, and, upon the refusal of the court to set it aside, brings the case here by appeal. The defendant now contends that there was no error in the ruling of the court, because the plaintiff's petition states no cause of action for an accounting, and her evidence substantiates none. The plaintiff takes issue on both these propositions.

So much of the petition as bears upon the first inquiry is as follows:

The plaintiff states, "that defendants James N. Crouch and Mary E. Crouch are husband and wife, and that plaintiff is half sister to the latter; that, in the summer of 1888, plaintiff and said James N. Crouch entered into an agreement to buy between them and speculate on a half interest in an option on certain real estate, situated in St. Louis county, Missouri, then known as the 'Benton farm,' plaintiff furnishing all the money used in the enterprise, said James N. Crouch engaging his business experience, labor and skill therein; that the amount thereupon furnished by plaintiff was the sum of $250, and that shortly thereafter said James N. Crouch succeeded in securing said one-half interest in said option, paying therefor said sum of $250; that shortly afterwards, in or about August, 1888, the Kenwood Investment Company, a corporation organized under the laws of Missouri, purchased said Benton farm at an advance of a large amount, to-wit, the sum of $15,000, over and above the purchase price named in in the option aforesaid, said James N. Crouch using said option in the transfer from the original owners of said Benton farm to said corporation; that the promoters of said Kenwood Investment Company allowed plaintiff and said James N. Crouch shares of stock in

said corporation, of the par value of $6,500, as their share of the capital stock of said company, accruing to them from the use and management of said option from its acquisition to the purchase by said corporation of said Benton farm; that $1,000 par value of said stock was thereupon received by said James N. Crouch in his own name, and $5,500 par value thereof in two certificates, of $5,000 and $500 respectively, by plaintiff in her own name, said James N. Crouch at the same time paying to plaintiff the sum of $250, and requesting and receiving from her the receipt which he originally gave her for the same; that on the same day plaintiff received the two certificates aforesaid, she was requested by said James N. Crouch to assign the one for $5,000 to defendant, Mary E. Crouch, which, in the belief that it was in furtherance of the original agreement between her and him, she at once complied with, asking or receiving no consideration therefor at the time; that subsequently, in May, 1889, said James N. Crouch proposed to plaintiff to pool all the stock in said corporation owned by them and realize upon the same, to which plaintiff consented."

The petition then goes on to state that all the stock was transferred by the defendant Crouch to third parties, and that he received in exchange therefor a house and lot and $2,100 in money; that out of "the $2,100 received by said Crouch as aforesaid, he then and there gave to plaintiff the sum of $400 in a pretended settlement of the profits of the purchase and management of the option aforementioned, which she then and there accepted; but plaintiff further states that she was in utter ignorance of her rights at the time said settlement was made; that she relied implicitly on said James N. Crouch, who was well acquainted with her for years, who had previously been befriended by her, and who was related to her through his wife,

to make a full, fair and just settlement; that she at no time advisedly waived any of her rights under the original agreement first mentioned; that a portion of said original agreement was that, in case the original investment of $250 was lost, said James N. Crouch would refund to plaintiff one-half the amount thereof, while, if it proved profitable, *both he and the plaintiff were to make considerable profit out of it.*"

The petition concludes with a prayer that the pretended settlement between plaintiff and defendant, James N. Crouch, be cancelled and set aside; that said James N. Crouch be ordered to account to plaintiff for an equal one-half portion of the original profits of the original agreement hereinbefore first referred to, and for other relief.

The petition is very inartificially drawn, and it is difficult to glean from it what it intends to charge as to the character of the business relations created between the plaintiff and the defendant Crouch by their engaging in the venture mentioned. It is evident at first glance that no partnership is charged, because, in order to create that relation in this state, a mere participation in profits and losses of the business does not suffice. There must be such a community of interest as empowers each party to make contracts, incur liabilities, manage the whole business, and dispose of the whole property, a right which upon the dissolution of the partnership by death of one passes to the survivor, and not to the representatives of the deceased. *Donnell v. Harshe*, 67 Mo. 170; *Musser v. Brink*, 68 Mo. 242; *Newberger v. Friede*, 23 Mo. App. 631, 637, and cases cited. The case of *Lengle v. Smith*, 48 Mo. 276, on which plaintiff relies, is irreconcilable with the later cases decided by the supreme court. As we stated in *Newberger v. Friede, supra,* "we are bound to follow the last controlling decision of the

supreme court on the subject, and to regard *Donnell v. Harshe* as overruling *Lengle v. Smith.*"

As no partnership is charged in the petition, either expressly or by implication, the question arises what other facts does the petition charge which would entitled the plaintiff to an account in equity for a definite amount. The petition does not state what the original contract between the plaintiff and the defendant, Crouch, was, any further than "that they entered into an agreement to buy between them and speculate on a half interest in an option in certain real estate," and, further, that in case the original investment of $250 (which the plaintiff furnished) was lost in the venture, said Crouch would refund to the plaintiff one-half thereof, while, if the venture proved profitable, "he and plaintiff were to make considerable profit out of it." The petition nowhere charges, either expressly or (in the absence of an allegation of partnership) by necessary intendment, that the plaintiff and Crouch were to derive the profit arising from the venture share and share alike. It does charge in a blind way that the plaintiff did receive $400 in settlement of her profits of the venture, and that she seeks to set aside that settlement, but it nowhere charges that this settlement was brought about by any fraud or misrepresentation on the part of Crouch, or that the $400 were not a considerable profit on an investment of $250. The sum and substance of the petition is, that the plaintiff gave to the defendant $250 to invest in a joint venture, out of which, if it proved profitable, she and the defendant were to make considerable profit; that if, on the other hand, it proved unprofitable, she was to have half of the money returned to her; that subsequently in settlement of her share of the profits the defendant gave her $400, but that this settlement should be set aside as inequitable, and she should be

let into a full participation to the extent of one-half of all the profits.

The true test of the sufficiency of a petition is whether, if all the facts therein stated are true, the plaintiff is entitled to any relief. It is evident that all the facts stated in this petition might be true, and yet the plaintiff would be entitled to no relief. The petition nowhere shows what the share of the plaintiff in the profits was to be, except that it was to be *considerable,* nor does it show that the settlement of her profits, when made, was brought about by fraud or misrepresentation. The court would have been justified in sustaining the defendant's objection to the introduction of any evidence under this petition, and hence was justified in declaring that, under the *pleadings* and evidence, the plaintiff was not entitled to any relief.

The plaintiff was the only witness who testified orally at the trial. She stated the transaction substantially the same as it was stated in her petition. She said in addition that nothing was said as to the ratio of division of the profits, except that the defendant said in a laughing way, "he would like to limit me." When the $6,500 of stock, of which $6,250 represented the profit of the venture, was received, the defendant gave to the plaintiff $500 of it, retained $1,000 in his own name and $5,000 in the name of his wife. He said to the plaintiff that he would not be willing to give her less than $500. The plaintiff afterwards transferred her $500 of stock to the defendant to enable him to pool it with his stock in trading the entire amount to a third party. After the trade was consummated, the defendant paid to the plaintiff $400, stating that that represented the proceeds of her stock, less amounts for expenses and taxes. It appeared affirmatively from the plaintiff's own evidence that she at no time prior

to the institution of this suit claimed more than what she received, nor sought an explanation from the defendant why he did not give her more than the $500 of stock out of the $6,500. When the $400 was paid to her, she made no reply at all; she simply took the money. The plaintiff's testimony places it beyond any doubt that she knew what the profits of the original venture were, and that, in receiving the $500 of stock in the first instance, and the $400 of money subsequently as proceeds of such stock, she knew that it represented the amount which the defendant intended to give to her as her share of the proceeds of the venture; still she made no objection and asked for no explanation. The plaintiff's evidence, and that of a witness who testified by deposition that the defendant had made a statement to him subsequently to the settlement, that "by rights the plaintiff should have had one-half of what the defendant made, but that plaintiff very generous and did not ask for it," was all the evidence in the case.

It will be thus seen that the evidence was no broader than the petition, and furnished no basis for a right to an account. Independent of the defendant's admission last above quoted, the plaintiff's evidence tends to negative any promise, express or implied, to pay to her any definite amount of her share of the venture beyond the amount which she had already received. Whether the defendant's admission last above quoted could be made available in an action at law for conversion, or in an action for money had and received by the defendants to plaintiff's use, we need not speculate upon, as this is not such an action. As the basis of an independent promise furnishing a right to an account, it is clearly unavailable, because it contains no promise, because the statement was not made to the plaintiff, and because it was made after the set-

tlement was had which the plaintiff now seeks to set aside. Neither has the statement, taken as a whole, any tendency to show fraud in the settlement.

We fail to see, therefore, either in the plaintiff's petition or in the evidence adduced in support thereof, any ground for equitable relief. No partnership is alleged or shown; hence, equitable relief cannot be invoked on the ground of partnership account. No fraud in the alleged settlement is charged or shown; hence there is no claim presented for equitable relief on that ground. Touching the only allegations calling for equitable relief in the petition, namely, the setting aside of certain conveyances for fraud, there is not a particle of evidence in the record. It nowhere appears that, if the plaintiff has any right, she has not an adequate remedy at law.

Seeing no error in the record, the judgment is affirmed. All the judges concur.