THE STATE *ex rel.* HARVEY V. COOK, *Appellant.*

| 82 | 185 |
|----|-----|
| 97 | 305 |
| 82 | 185 |
| 102 | 669 |
| 82 | 185 |
| 139 | 613 |

1. **Revenue:** ASSESSOR'S BOOK: VERIFICATION. Wagner's Statutes, section 61, p. 1170, relating to assessment of revenue, authorizes but one tax book, which shall contain the lists of both real and personal property, and where the assessor made out for the year 1873 a book for each kind of property, but failed to verify the land book, the assessment for such year was invali

2. **Assessment of Land, when based on Former Year:** NEW BOOK. Although the law provides that an assessment of land shall stand good for two years, and that the assessment of the second year shall be based on the first, yet such assessment, when based on the former one, has to be made out in a new book, and the old one returned to the clerk of the county court.

3. **Invalid Assessment.** The assessment for the second year in this case, held invalid for two reasons: 1st, Because there was no legal assessment for the first year, the assessor having failed to verify it by his affidavit as required by law; 2nd, Because the assessor made out no new land book for the second year as required by said section 61, Wagner's Statutes, p. 1170.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*W. B. Martindale* for appellant.

The assessment for 1873 was not verified as required by law. Wag. Stat., § 61, chap. 118. It is nowhere provided that the assessment may be divided into two books, nor that a certificate attached to one book shall sufficiently authenticate some other book. One book, the land assessment one, must be treated as not certified to. *Newell v. Smith,* 38 Wis. 39. For 1874 no assessment whatever of lands was made or returned. The assessment of 1873 could not supply the place of a new assessment altogether for 1874. Wag. Stat. 1872, chap. 118, §§ 38, 61, 65. There being no land assessment for 1874, no land tax book could be made, and the tax assumed to be levied for that year was void. Cooley on Taxation, p. 259 ; *Thurston v. Little,* 3 Mass. 429 ; *Mason v. Whitney,* 1 Pick. 140 ; *People v. Hastings,* 29 Cal. 449.

*Bryan & Sanders* for respondent.

SHERWOOD, J.—Action brought in 1878 for taxes due on certain land for the years 1873 and 1874. Section 61, 2 Wag. Stat. 1170 provides that: "The assessor shall make out and return to the county court, on or before the 20th day of January in every year, a fair copy of the assessor's book, verified by his affidavit annexed thereto in the following words, etc." This section so far as quoted shows in plain and unambiguous language that there is but one book authorized by this section, and further on the section shows that the book to be made out by the assessor is to contain lists of both real and personal property. This section was not obeyed in the present case. The assessor when making out his book for the year 1873 made out two instead of one. That relating to personal property was verified as required by law, except that the words, "foregoing books," were used in the affidavit "annexed thereto," but there was no affidavit annexed to the book which contained the land list and, of course, there was no verification of that list or that book. Sec. 38, chap. 118, Wag. Stat. (Ed. 1878) reads: "The clerk of the county court shall deliver to the assessor, on or before the first day of August, 1871 and 1872, and every two years thereafter, the assessor's book of the last assessment of real estate,   *   *   *   and the assessor, so soon as he shall have completed his assessment for the year and made his assessor's book shall return" the same, etc.

This section, though so explicit, did not meet with compliance; for there was no land assessment or book for the year 1874 made or returned to the clerk as required by that section. True, the law provides that where an assessment of land is made, it shall stand good for two years, and that the assessment of the second year shall be based upon that of the first, but still, an assessment, though based on the former one has to be made out in a new book, and the

old one returned to the clerk of the county court. The law knows but one assessor's book, which contains both the real and personal property, and of this book section 61, *supra* requires that the assessor make out and return to the county court a fair copy every year, and section 65 of the same chapter requires that the clerk of the county court make a fair copy of the assessor's book, authenticated by the seal of the court, and deliver the same to the collector. And if the land list for 1873 was not verified as required by law, as already seen, there could not be any valid basis on which to make out, either an assessor's book, or, an assessment, at least, so far as land was concerned for the year 1874.

Treating of proceedings of the nature now being discussed an eminent jurist and author remarks: " Of the necessity of an assessment no question can be made. Taxes by valuation cannot be apportioned without it. Moreover, it is the first step in the proceedings against individual subjects of taxation and it is the foundation of all which follow it. Without an assessment they have no support and are nullities. It is, therefore, not only indispensable, but in making it the provisions of the statute must be observed with particularity. If this were not compulsory, if the officers were to be at liberty to disregard important provisions of the statute in this initiatory step, the chief protection which the law has intended for individuals in tax cases would be removed." Cooley on Tax., 260. And when discussing the necessity of the authentication of the work of the assessor the same author remarks: "The result of the action of the assessor is embodied in an assessment roll or list. The statutes provide how this shall be authenticated and compliance with their provisions is expected. The methods are different in the different States and are sometimes changed in the same State. But the rule of law is clear." Ib. 289. In another work on taxation when speaking of authentication of documents

relating to taxation language of similar purport is employed. Blackwell Tax. Tit., pp. 112, 113, 348 and 349. In *Johnson v. Elwood*, 53 N. Y. 435, it was held that where the assessment roll lacked verification by the affidavit of the assessor, this defect would render void the tax deed. In another case, where the law required the roll to be signed and a certificate to be attached, the signing of the certificate was held not to dispense with the signing of the roll, and if that was not signed no proceedings could be taken upon it. *Sibley v. Smith*, 2 Mich. 486. Similar rulings have occurred in reference to affidavits of assessors to their assessment rolls in the State of Wisconsin, and that such affidavits in compliance with the statute in every particular were matters of substance and not of mere form, and that a failure to comply with the statute in this regard was fatal to all subsequent proceedings. *Marsh v. Supervisors*, 42 Wis. 502; *Plumer v. Supervisors*, 46 Wis. 163. And in the *Town of Warrensburg ex rel. Colbern v. Miller*, 77 Mo. 56, where the town charter required that the assessor return to the council his tax book, and that a copy of this, so far as concerned the delinquent taxes, should be made out and delivered to the collector, and this was not done, but the original assessor's book was by resolution of the council delivered to the collector in lieu and stead thereof, the whole proceedings were held invalid and that the collector could not take shelter under them.

Tested by the rules announced in the authorities cited, the tax proceedings in the case at bar must be held for naught. The assessment roll of 1873, because not verified as required by law, and the assessment of 1874 are invalid for two reasons: first, because it had no basis whereon to rest, to-wit: a legal assessment in 1873; and second, because the assessor made out no book, embracing a land assessment for the year 1874 as required by section 61, *supra.*

In respect to the question of whether the suit of the former collector abated upon expiration of his term of

office, it suffices to say that it is too late to raise the question here after entering an appearance to the action as revived in the court below. And in regard to the sale in the probate court of the land now sought to be taxed, such a sale could not defeat any right which the State had against the land for taxes accruing prior to such sale.

For the reasons aforesaid, the judgment should be reversed and the cause remanded. All concur. Hough, C. J., absent.